# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY ALLEN BERNAL,<br><br>Defendant. | Case No. 1:17-cr-00250-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant Anthony Allen Bernal's objection to the Government's Requested Sentencing Enhancements. As outlined below, the Court finds the Government's arguments are persuasive: Bernal's conviction for aggravated assault under Idaho Code sections 18-901(a) and 18-905(b) constitute a crime of violence. Accordingly, Bernal's base offense level is 24.

## I. BACKGROUND

On September 14, 2017, the Grand Jury indicted Bernal on one count of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Dkt. 1. On January 16, 2018, Bernal entered a guilty plea to count one of the Indictment and the Forfeiture as contained in the Indictment. Dkt. 19.

On March 6, 2018, the United States Probation Office issued its Initial Presentence Investigation Report ("PSR") recommending a base offense level of 14 and a two-point enhancement under section 2K2.1(b)(6) of the United States Sentencing Guidelines

because the firearm involved was stolen. Dkt. 22, at 5. Combined with three-point reductions for accepting responsibility and timely notifying authorities of his intention to enter a guilty plea, the Probation Office recommended Bernal receive a total offense level of 13. *Id.* at 5–6.

The Government objected to the base offense level, arguing that it should be 24 under section 2K2.1(a)(2). Dkt. 26, at 2. The Government also argued Bernal should receive an additional four-point enhancement under section 2K2.1(b)(6)(b) because he possessed the firearm in connection with another felony offense—possession of a controlled substance. *Id.* at 2–5. Thus, including the recommended three-point reduction, the Government advocated for a total offense level of 27. *Id.* at 5.

Bernal responded, arguing that the Court should assign a base offense level of 20 and that it should not apply the four-point enhancement under section 2K2.1(b)(6)(b). (Dkt. 27)

The United States Probation Office issued a revised PSR that recommended a base offense level of 20 and recommended that the Court decline to apply the four-point enhancement for which the Government advocated. Dkt. 29.

The Court was originally scheduled to sentence Bernal on April 30, 2018. However, unable to resolve the disputes regarding the base offense level and four-point enhancement, the Court continued sentencing and ordered the parties to brief the issue. Dkt. 33. That briefing is now complete and ripe for decision. Here, the Court addresses Bernal's base offense level.

## II. ANALYSIS

*A. Base Offense Level*

Section 2K2.1(a), which applies to the unlawful receipt, possession, or transportation of firearms or ammunition, or prohibited transactions involving firearms or ammunition, provides in relevant part as follows:

(a) Base Offense Level (Apply the Greatest):

. . .

(2) **24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;

. . .

(4) **20**, if—

(A) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense; . . .

U.S.S.G. § 2K2.1(a). The Sentencing Guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—"

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). "The first clause of this definition is known as the 'elements clause,' the second as the 'enumerated offenses' clause." *United States v. Edling*, No. 16-10457, 2018 WL 3387366, at *2 (9th Cir. June 8, 2018).

On March 3, 2009, Bernal was convicted of possession of an unregistered firearm (a firearm referenced in 26 U.S.C. § 5845(a)) in this Court. Dkt. 29, at 5; Case No. 1:08-cr-00148-BLW (D. Idaho). The parties appear to agree that this conviction qualifies as a crime of violence. On April 26, 2013, Bernal was convicted of aggravated assault under Idaho Code sections 18-905(b) and 18-901(a) in Idaho state court. The parties disagree whether this conviction constitutes a crime of violence. The Government asserts it constitutes a crime of violence under either the elements clause or the enumerated offense clause. The Court begins its analysis with the enumerated offense clause.

### 1. Enumerated Offense Clause

When determining whether a prior conviction constitutes one of the crimes listed in the enumerated offense clause, courts utilize the "categorical approach" and "modified categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990). and *Descamps v. United States*, 570 U.S. 254 (2013). *See Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016). Under the categorical approach, the Court "compare[s] the elements of the state statute of conviction to the generic federal definition of a crime of violence." *United States v. Werle*, 877 F.3d 879, 881 (9th Cir. 2017). "If the language of the state statute only reaches conduct that falls into the generic federal definition, a conviction under that law is categorically a crime of violence and [the] inquiry is at an

end." *Id.* If the language of the state statute of conviction sweeps more broadly than the generic federal definition of a crime of violence, the Court must determine if the state statute is "divisible." *Id.* A statute is divisible if it "lists several alternative elements, really several different crimes, as opposed to various means of committing a single crime." *Id.* If the statute is divisible, the Court applies the "modified categorical approach" to determine "precisely which statutory elements 'formed the basis of the defendant's prior conviction.'" *Id.* (quoting *Descamps*, 133 S. Ct. at 2281).

Section 18-901, "defines assault in two, alternative ways," *Ward v. United States*, No. 1:11-CR-00142-EJL-1, 2017 WL 2216394, at *10 (D. Idaho May 18, 2017), as follows:

> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
>
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

Idaho Code § 18-901. Section 18-905 "defines aggravated assault in three, alternative ways," *Ward*, 2017 WL 2216394, at *10. An aggravated assault is an assault:

> (a) With a deadly weapon or instrument without intent to kill; or
>
> (b) By any means or force likely to produce great bodily harm.[; or]
>
> (c) With any vitriol, corrosive acid, or a caustic chemical of any kind.

Idaho Code § 18-905.

The Government argues Bernal's conviction for aggravated assault meets the definition of crime of violence under either the categorical or modified categorical approaches. Bernal disagrees, but does agree that both Idaho Code section 18-901 and 18-905 are divisible, and thus that the modified categorical approach applies. Indeed, both sides acknowledge that Judge Edward Lodge in *Ward v. United States*, concluded that "Idaho's assault statute is divisible." 2017 WL 2216394, at *10 (D. Idaho May 18, 2017). In *Ward*, Judge Lodge went on to conclude that the defendant's conviction under Idaho Code section 18-901(b) was a crime of violence. *Id.* at 10-11. *Ward* left unanswered the question now presently before the Court: whether aggravated assault under section 18-901(a) and 18-905(b) is a crime of violence.

The Court need not conduct much analysis to determine "precisely which statutory elements formed the basis of the defendant's prior conviction" as parties appear to agree that Bernal was convicted under section 18-901(a) and 18-905(b). The Idaho state court Judgment & Commitment specifically list these subsections. Dkt. 33-1. Thus, the Court finds Bernal was convicted of "[a]n unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another," Idaho Code § 18-901(a), using "means or force likely to produce great bodily harm," Idaho Code § 18-905(b). The Court can now compare the elements of Bernal's conviction for aggravated assault under Idaho Code sections 18-901(a) and 18-905(b) with the elements of the generic crime of aggravated assault, which Amendment 798 (effective August 1, 2016) specifically added to the enumerated offenses clause found in § 4B1.2(a)(2) of the Sentencing Guidelines.

To determine what the elements of the generic crime are, courts generally "survey[] a number of sources—including state statutes, the Model Penal Code, federal law, and criminal law treatises." *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1084 (9th Cir. 2015); *United States v. Gomez-Leon*, 545 F.3d 777, 790 (9th Cir. 2008). ("When the enumerated offense is a traditional crime, . . . we derive its uniform meaning from the generic, contemporary meaning employed by most states, guided by scholarly commentary."). The only dispute the parties appear to have is over whether the mens rea requirement of Idaho's aggravated assault statute under 18-901(a) punishes more than the generic federal offense. Bernal argues "the generic definition [of aggravated assault] under federal law requires 'extreme indifference to the value of human life' which is not at all like Idaho's broad statute that includes conduct much less culpable including simple assault." Dkt. 35, at 7.

In *Garcia-Jimenez*, the Ninth Circuit closely examined the generic definition of aggravated assault and the mens rea requirement. 807 F.3d at 1085–86. The court concluded that "assault, in its various forms, is a general intent crime" and "that a mens rea of extreme indifference recklessness [was] not sufficient to meet the federal generic definition of aggravated assault." *Id.* at 1086-87. The court explained that "[t]he weight of authority—approximately two-thirds of the states, the common law, federal law, and at least one treatise, . . . establishes that the federal generic definition of aggravated assault does not incorporate a mens rea of extreme indifference recklessness." *Id.* at 1085-87

("[T]hirty-three states and the District of Columbia do not punish as aggravated assaults offenses committed with only extreme indifference recklessness.").

The Government argues that, in Idaho, the crime of assault requires the state to prove that the defendant *intended* to "commit a violent injury on the person of another." The Idaho Supreme Court has held that "the crime of attempt to commit a crime" requires "that the defendant intended to commit the crime." *State v. Pratt*, 873 P.2d 800, 812 (Idaho 1993);[1] *cf. State v. Daniels*, 11 P.3d 1114, 1117–18 (Idaho 2000). Subsequent Idaho Court of Appeals decisions have applied *Pratt* to the assault statute, which has as one of its elements "an unlawful attempt." *Daniels*, 11 P.3d at 1117. In *State v. Larson*, the Idaho Court of Appeals specifically held that, "by the plain language of I.C. § 18–901(a), assault by attempt to commit a violent injury requires *actual intent to injure*." 344 P.3d 910, 916 (Idaho Ct. App. 2014) (emphasis added). Moreover, in *Garcia-Jimenez*, the Ninth Circuit cited Idaho's assault statute, § 18-901, as one of the "[t]hirty-three states and the District of Columbia [that] do[ed] not punish aggravated assaults offenses committed with only extreme indifference recklessness." 807 F.3d at 1085 & n.6.

Based on *Pratt*, *Larson*, and *Garcia-Jimenez*, the Court agrees with the Government that section 18-901(a) does not punish more conduct than the generic federal offense. Because the "statute only reaches conduct that falls into the generic federal

---

[1] The Government asserts that *Pratt* overruled *State v. Patterson*, 88 P.2d 493, 494–95 (Idaho 1939), in which the Idaho Supreme Court held that a defendant could be criminally liable for assault under Section 18-901(a) if his volitional conduct amounted to an assault that was "reckless, wanton, and willful, showing an utter disregard for the safety of others, [and] imput[ing] to the wrongdoer a willful and malicious intention even though he may not in fact have entertained such intention." Cases after Pratt have recognized that Pratt implicitly overruled Patterson and its progeny. *See Idaho v. Larson*, 344 P.3d 910, 915–16 (Idaho Ct. App. 2014).

MEMORANDUM DECISION AND ORDER –8

definition," the Court finds Bernal's conviction for aggravated assault under Idaho Code sections 18-901(a) and 18-905(b) is a "crime of violence." *Werle*, 877 F.3d at 881.

## 2. Elements Clause

As stated previously, under the elements clause, a crime is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). "[I]n the context of a crime of violence, 'physical force' entails 'violent force—that is, force capable of causing physical pain or injury to another person.'" *United States v. Perez-Silvan*, 861 F.3d 935, 942 (9th Cir. 2017) (quoting *Johnson v. United States*, 559 U.S. 133, 139–43 (2010)). In *Johnson*, the Supreme Court clarified that "while mere touching would not qualify as physical force, a slap in the face would suffice." *Blackeagle v. United States*, No. 3:16-CV-00245-BLW, 2017 WL 442774, at *7 (D. Idaho Feb. 1, 2017) (explaining *Johnson*, 559 U.S. at 143).

Idaho's aggravated assault statute under section 18-901(a) requires "a) an unlawful attempt, b) coupled with apparent ability c) to commit a violent injury on the person of another." *Daniels*, 11 P.3d at 1117. As explained in the previous section, 18-901(a) does not punish mere reckless conduct. It requires the *intent* to commit violent injury.[2] In addition, Bernal was convicted under section 18-905(b), which requires the use of "means or force likely to produce great bodily harm." Thus, to fall under section 18-905(b), the attempted violent injury, which must be likely to produce great bodily harm,

---

[2] The parties spend a large portion of their briefs discussing *Voisine v. U.S.*, 1365 S.Ct. 2272 (2016) and whether it extends crime of violence status to reckless conduct. As the Court finds section 18-901(a) requires more than reckless conduct, the Court need not further address *Voisine*.

MEMORANDUM DECISION AND ORDER –9

must at least rise to the level of an attempt to slap another in the face. *See Blackeagle*, 2017 WL 442774, at \*7-\*8; *see also Perez-Silvan*, 861 F.3d at 942–43 (finding an offensive touching that causes serious bodily injury to another or involves the use or display of a deadly weapon entails the use of violent force). Bernal has not cited any cases with contrary holdings. Thus, the Court finds that, under the elements clause, a conviction for aggravated assault under 18-901(a) and 18-905(b) constitutes a crime of violence because it "has as an element the . . . attempted use . . . of [violent] physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

### 3. Conclusion

In sum, the Court finds Bernal's conviction for aggravated assault constitutes a crime of violence under either the enumerated offense or elements clause. Thus, Bernal was convicted of at least two felony crimes of violence prior to committing the instant offense. Accordingly, under § 2K2.1(a), Bernal's base offense level is 24.

### *B. Additional Arguments*

Bernal makes two additional arguments the Court must address. First, Bernal argues the Government is breaching his plea agreement. Second, Bernal argues sections 18-901(a) and 18-905(b) is void for vagueness.

### 1. Breach of the Plea Agreement

Bernal argues the Government is breaching the section of the plea agreement in which it agreed to recommend a sentence "within the guideline range." The Government has not breached this provision. The Government's arguments, that Bernal's base offense

level should be 24 because he has previously sustained two convictions for felony crimes of violence, speak directly to what Bernal's guideline range should be. An argument for a higher guideline range does not amount to a recommendation to a sentence outside of the guideline range.

### 2. Vagueness Arguments

Finally, Bernal argues Idaho's aggravated assault statute subsections §§ 18-901(a) and 18-905(b) are void for vagueness in a sentencing guideline application, pursuant to *Sessions v. Dimaya*, 138 S.Ct., 1204 (2018), and violate his Due Process and Eighth Amendment rights. Bernal's argument amounts to a collateral attack on his state conviction that is impermissible at this point.

In *Custis v. United States*, the Supreme Court held "that a defendant has no constitutional right to collaterally attack a state court conviction used to enhance a sentence under the ACCA, at the time of such sentencing, except in the limited circumstance of a conviction obtained in violation of the right to counsel." *United States v. Fondren*, 54 F.3d 533, 534 (9th Cir. 1994). The Ninth Circuit subsequently held that "the Sentencing Guidelines [do not] afford an independent source of authority for a collateral challenge to a predicate state conviction at the time of an ACCA sentencing." *Id.* Bernal has not asserted that his conviction for aggravated assault was obtained in violation of his right to counsel. Accordingly, the Court cannot entertain, and thus will not address, Bernal's attempts to collaterally attack this conviction.

# III. ORDER

The Court HEREBY ORDERS:

1. Bernal's conviction for aggravated assault under Idaho Code sections 18-901(a) and 18-905(b) constitute a crime of violence.

2. Because Bernal has sustained two prior convictions of felony crimes of violence, Bernal's base offense level is 24.

DATED: August 7, 2018

David C. Nye
U.S. District Court Judge